# United States District Court
## Northern District Of Illinois
### Eastern Division

| | |
|---|---|
| Lois Trask, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | No. **02 C 7384** |
| ) | |
| City of Chicago Police Dept. ) | Combined with 02 C. 7468 |
| David Holliday, Sergeant John ) | as ordered by the Honorable Judge Manning |
| Doyle, H, Wilson, #17355, ) | and transferred from The Honorable Judge |
| C. Janotu, #16940 & Unkn. Ins. Co. ) | Plunket and Magistrate Judge Keys |
| Jackson Park Hospital, Security Dept.) | |
| Officer Henry and Officer Smith and ) | |
| Unknown other African American ) | |
| Male Officer, Yvone Gillin Wallace, ) | The Honorable Presiding Judge MANNING |
| And Unknown Insurance Company. ) | Honorable Magistrate Judge Levin |
| Officers, & Officer Holiday. ) | |

FILED OCT 29 2003 CLERK, MICHAEL W. DOBBINS U.S. DISTRICT COURT

DOCKETED OCT 3 0 2003

## NOTICE OF FILING

**To:** April R. Walkup     Chicago Police Dept.
**Querrey & Harrow,**     **3510 South Michigan**
175 W. Jackson Blvd. #1600    Chicago, Illinois 60605

PLEASE TAKE NOTICE that on the 29th day of October, 2003 I filed with the Clerk of the U.S. District Court for the Northern District of Illinois, Plaintiff's Amended Combined Complaint against Jackson Park, Hospital, Staff, Security Staff and the Chicago Police Department and Staff as per order of the Honorable Judge Manning, same was completed and filed.

/s/ Lois Trask
Lois Trask

## CERTIFICATE OF SERVICE

Please take note that on October 29, 2003, I served a copy of the above mentioned motion to all parties listed on the record for service by depositing same in the U.S. Mailbox with proper postage affixed to same at 220 S. Dearborn, Chicago, Illinois, before the 5:00 hour on this 29th day of October 2003.

/s/ Lois Trask

Lois Trask
7776 S. Coles Avenue
Chicago, Illinois 60649
773-734-7238

2/1

**United States District Court**
**Northern District Of Illinois**
**Eastern Division**

Lois Trask, )
        Plaintiff, )
)
Vs. ) No. **02 C 7384**
)
City of Chicago Police Dept. ) Combined with 02 C. 7468
David Holliday, Sergeant John ) as ordered by the Honorable Judge Manning
Doyle, H, Wilson, #17355, ) and transferred from The Honorable Judge
C. Janotu, #16940 & Unkn. Ins. Co. ) Plunket and Magistrate Judge Keys
Jackson Park Hospital, Security Dept.)
Officer Henry and Officer Smith and )
Unknown other Africian American )
Male Officer, Yvone Gillin Wallace, ) The Honorable Presiding Judge MANNING
And Unknown Insurance Company. ) Honorable Magistrate Judge Levin
Officers, )
        Defendant. )

<u>**AMENDED**</u>

**DOCKETED**
**OCT 3 0 2003**

**Complaint at Law**
<u>**TORT OF FALSE IMPRISONMENT**</u>
**Count I**

NOW COMES the PLAINTIFF, LOIS TRASK, PRO SE LITIGANT, and complains of the Illegal seizure of her person by Officers of the Chicago Police Department, 1830 West Monterey, Chicago, Illinois. Specifically, on October 12, 2002 at 9919 S. Parnell, Chicago, Illinois, "The House of James Trask Sr., Plaintiff's Father" Plaintiff's brother, Larry Trask Sr. called the Police and advised the police that Plaintiff Lois Trask had pulled a knife and gun on him at their father's house.

Officers David Holliday, Sergeant John Doyle and unknown officer, responded to the telephonic allegations of assault with a knife lodged by Larry Trask Sr. and came to 9919 S. Parnell to investigate. When the police arrived, Larry Trask Sr. told the officer

1.

that plaintiff had a gun and knife in her purse. Officer, David Holliday, searched Plaintiff's person, while in the living room of her father's house and purse and stated that there was no gun or knife found. Larry Trask Sr. then told the officer that Plaintiff was crazy- that plaintiff had been incarcerated in a Mental Institution on 3 (three) separate occasions; that Plaintiff was under a doctor's care and that Plaintiff is on a medication schedule and refuses to take her medication. Larry Trask, Sr. then produced a document that he represented to the police as verifying that Plaintiff had been incarcerated in a Mental Institution. As the officer examined the document, proffered by Larry Trask Sr., Plaintiff observed that the birth year contained on the document was for 1975.

Plaintiff states that casual observation of her person gives evidence that Plaintiff is not 27 years old. Plaintiff informed the officer, examining the proffer document, that the person date of birth indicated a birth year of 1975, clearing plaintiff is not the person referred to in the aforementioned document. The officer responded that it was too bad that Plaintiff was still going to Jackson Park Hospital. Officer refused to allow plaintiff to dress, obtain her purse and or belongings. Plaintiff was handcuffed. Plaintiff asked the arresting officers whether she was under arrest and the officers said, yes. Plaintiff then asked the arresting officers if they were going to read her Miranda Rights and the officer said, we'll do it later. Moreover, Larry Trask Sr. told the arresting officers that Plaintiff had entered her mother's bedroom, pressed on her abdomen and caused her mother's demise. In addition, Larry Trask Sr. (hereafter Larry) told the arresting officers that Plaintiff had attempted to poison her father, James Trask Sr.. At the time Larry made the aforementioned false allegations, impuning plaintiff's reputation and character, the following witnesses were present: James Trask Sr., Lula Stidwell, Cynthia Stidwell,

Darrick Trask, Lorell Jones, Deliliah Stidwell, Clenert Trask, Officer Doyle and two police officers names unknown _____ _____.

Plaintiff's was escorted from her father house, handcuffed with only a robe on and her under garments and placed in a police squad car, amidst plaintiff constant protest and request to allow her to put on clothing. The arresting officer's decline to allow Plaintiff to put on clothing and instead took plaintiff as she was. Plaintiff complained to the arresting officers that her handcuffs were so tight, it caused Plaintiff to cry out in pain and continue to complain and continued to say that the handcuffs, interfered with her Blood/Circulatory System, bowel system, nervous System, aching joints, low blood pressure, skin disorder, Heart Problems, stress, depression and Rhmatoid Arthritis. Officers were unresponsive to Plaintiff's complaint and need of pain medication.

Plaintiff was transferred to the Police Station, 11100 S. Monterey, Chicago, Illinois, in a squad car, handcuffed to her back while in her father's living room, singing at the piano as her father played the piano. Plaintiff was immediately handcuffed to a wall, left there for 2 ½ hours without being able to use the washroom and her cell phone was taken from her and never returned. Police Officers, H. Wilson #17355 and C. Janotu #16940 (312-747-6381) then transported Plaintiff in a dirty patty wagon to the Emergency Room of Jackson Park Hospital. Plaintiff, requested that if she must go to a hospital that she would prefer going to her own doctor at South Shore Hospital. Both officers agreed that they were taking her to South Shore Hospital. When the patty wagon stopped and Plaintiff was complaining that she did not want to go to Jackson Park because of personal reasons. After arriving at Jackson Park Hospital, the upon named police officers forced Plaintiff out of the wagon. Plaintiff has on a robe with only her undergarments and house

3.

slippers on her feet. Larry Trask was already present at the hospital filing out forms when Plaintiff arrived at Jackson Park. Larry Trask told hospital staff with Police and Plaintiff present, that Plaintiff was crazy, that Plaintiff had been incarcerated in a mental hospital on 4 (four) separate occasions; that plaintiff was currently under a doctor's care; and that plaintiff is on a medication schedule and refuses to take her medication.

Larry also told hospital staff that "Ms. Jones has been verbally and physically abusive at the house of James P. Trask Sr. of 9919 S. Parnell. She has a mental history and the police were called (3) times on 10-10-02 for disturbances. She daused against (6) six of her siblings. She has Seven (7) different names that she is subject to use. She is a pathological liar, has multiple personality complex, she's schicophrenic, she thinks that she is an attorney, preacher, private investigator a teacher and a preacher. Summons that were written by her and has been thrown out of four different hospitals. She is very ill mentally". Plaintiff "broke into hr father house, had a knife, Mr. Trask was in fear for himself and etc.". Larry uttered the fermented false and slanderous statements to hospital staff in the presence of the Police and Plaintiff. The hospital receptionist receiving the aforementioned false and slanderous allegations from the Larry, stated to defendant, Larry that if he left the hospital, then Plaintiff could also leave the hospital. Plaintiff then left Jackson Park Hospital Emergency Room and walked outside to the front of the main entrance of the hospital, borrowed 50 cents from a stranger waiting on the bus in the rain, robe, and house slippers, soak and wet entered the front of the hospital and used the public telephone. Plaintiff, called a friend, Dorothy Fields and explained the situation to Mrs. Fields, advising her that plaintiff had no money; was only in her robe/houseshoes and needed her to ask her husband if he would pick her up at the Jackson Park Hospital,

4.

Emergency Room. Claybourn Fields, Mrs. Field's Husband, stated that he would come and pick up Plaintiff. After telephonic speaking with Claybourn Fields, Plaintiff was returning to the emergency room area outside of the hospital. At this point, Plaintiff was grabbed by Jackson Park Hospital Security Staff, Officer Henry, Officer Henry's Supervisor and a third unknown security staff and was dragged back through the emergency room entrance- as plaintiff was grabbed by hospital staff, plaintiff physically resisted the three security staff, protesting that they had no right to cohearse plaintiff back into the hospital. As hospital security continued to drag plaintiff back into the emergency room, her friend Claybourn Fields, approached the emergency room entrance and asked the three hospital security staff why they were dragging plaintiff into the hospital. Specifically, Mr. Fields asked the hospital security staff if plaintiff was under arrest and they replied that she was not under arrest. Plaintiff continued to refuse an medical treatment and stated that she did not need to see a doctor. Security Officers (Henry) and unknown other officer grabbed Plaintiff and physically, dragged her with the assistance of an unknown nurse. Plaintiff was placed in a locked room with windows reinforced with a steel or metal screen that was also dirty with roaches crawling all about her wet feet and clothes. Plaintiff was kept incarcerated for hours.

Plaintiff states that the defendant's behavior complained of in this action, constitutes false imprisonment and a violation of the 4th Amended of the United States Constitution, prohibiting, unreasonable searches and seizure. Plaintiff states that the Chicago Police Officers who seized her person and incarcerated her at Jackson Park Hospital were acting outside of the provisions of the 4th Amendment in that Plaintiff's seizure was unreasonable. Plaintiff seizure was unreasonable because the arresting officers

were exposed to numerous examples that Defendant, Larry was lying or fabricating the allegations against plaintiff. For example, when Defendant, Larry provided the arresting officers with a document, apparently, concerning Plaintiff's alledged incarceration in a mental institution, the fact that the document gave a birth year of 1975 should have alerted the arresting officers to the possibility that the document was bogus. Since violations of any federal statue and or constitutional right violates federal law, Plaintiff invokes the District Court Federal Question Jurisdiction. Moreover, Plaintiff alleges that the conduct of the arresting officers complained of in this case is also violative of the United States Code, Title 42 United States Code Section 1983.

## RELEIF

Plaintiff respectfully, request $250,000.00 (Two Hundred and fifty Thousand Dollars) in compensatory damages. Plaintiff argues that she is entitled to compensatory damages in the aforementioned amount because of the intentional infliction of emotional distress associated with being incarcerated in a mental facility, unjustifiably.

In addition, Plaintiff respectfully request $750,000.00 (Seven Hundred and Fifty Thousand Dollars) in punitive damages because the behavior of the arresting officers was intentional and malicious

Wherefore, Plaintiff, Lois Trask, respectfully request that her requested be granted along with any and all other order this honorable court and this Honorable Judge deems just and necessary and for this she shall forever pray.

Plaintiff Demands a Jury Trial.

COMBINED

Lois Trask
7776 S. Coles Avenue
Chicago, Illinois 60649

6.

## United States District Court
## Northern District Of Illinois
## Eastern Division

| | | |
|---|---|---|
| LOIS TRASK, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| Vs. | ) | No. **02 C 7384** |
| | ) | |
| City of Chicago Police Dept. | ) | Combined with 02 C. 7468 |
| David Holliday, Sergeant John | ) | as ordered by the Honorable Judge Manning |
| Doyle, H, Wilson, #17355, | ) | and transferred from The Honorable Judge |
| C. Janotu, #16940 & Unkn. Ins. Co. | ) | Plunket and Magistrate Judge Keys |
| Jackson Park Hospital, Security Dept. | ) | |
| Officer Henry and Officer Smith and | ) | |
| Unknown other African American | ) | |
| Male Officer, Yvone Gillin Wallace, | ) | The Honorable Presiding Judge MANNING |
| And Unknown Insurance Company. | ) | Honorable Magistrate Judge Levin |
| Officers, & Officer Holiday. | ) | |
|     Defendants. | ) | |

<u>COMBINED AMENDED COMPLAINT AT LAW-COUNT II</u>

<u>TORT OF FALSE IMPRISONMENT AND INTENTION INFLICTION OF MENTAL</u>

<u>DISTRESS</u>

NOW COMES, the Plaintiff, Lois Trask, Pro Se Litigant and submits her

Amended Complaint in accordance with the Court's instructions from the Honorable

Judge Manning Court to combine this complaint (02 C-7384 with 02 C 7468) complaining

of the unlawful restraint and false imprisonment she was subjected to by Jackson Park

Hospital Staff and Security Staff. Specifically, on October 12, 2002, Plaintiff was

transported by Chicago Police Officers to Jackson Park Hospital's Emergency Room, at

7500 S. Stony Island, Chicago, Illinois supposedly for purposes of coerced psychiatric

evaluation. Jackson Park Hospital is a State Actor or Agency of the State for purposes of Federal Question Jurisdiction and Title 42, United States Code, Section 1983, analysis and construction.

The Emergency Room Intake Staff at Jackson Park Hospital, after being advised by Plaintiff's brother, Larry Trask and the arresting and escorting police officers, Security Officers at Jackson Park Hospital, Officer Henry and Officer Holliday, concerning the alleged behavior of Plaintiff that supposedly provided "probable cause" to suspect that plaintiff required a coerced psychiatric evaluation, the intake staff, Yvonne G. Wallace stated to Larry Trask "that if he (Larry Trask) left the hospital before Plaintiff was transferred to Tinley Park Mental Hospital, then Plaintiff could also leave the hospital."

Plaintiff left the emergency room and went outside on 75th and Stony Island, where she made a phone call, using a public telephone situated just inside the main entrance of the hospital. Plaintiff exited the main entrance and had only walked a short distance back toward the emergency room when Jackson Park Hospital Security Guards, Officer Henry, Officer Holiday and Officer Henry's Supervisor, (Name Unknown) grabbed Plaintiff of the sidewalk and dragged Plaintiff back to the emergency room and physically coerced plaintiff into a room with windows covered by a steel or metal screen. Plaintiff was incarcerated in the aforementioned room for several hours and was never advised, by Jackson Park Hospital Staff, as to the reason for her incarceration. Plaintiff repeatedly inquired concerning the reason for her incarceration, however hospital staff refused to address Plaintiff's Inquiry. In addition, Plaintiff requested that the hospital staff contact the head nurse and/or her doctor and hospital staff was unresponsive to Plaintiff's request. Plaintiff again requested that her doctor, Dr. Wu be contacted.

Plaintiff maintains that Jackson Park Hospital violated her Right to be Free of Unlawful restraint and False Imprisonment in that, without probable cause, Jackson Park Hospital Staff grabbed her on a public way, restrained Plaintiff, physically and coercively, transported Plaintiff to the emergency room of Jackson Park Hospital and placed Plaintiff in what appeared to be a psychiatric observation room, located in the emergency room of Jackson Park Hospital and left Plaintiff there for several hours, despite Plaintiff's continous request to be released and despite her request that staff notify her personal physican at South Shore Hospital. Plaintiff was told hospital staff that she was going to stay in the hospital and be transferred, even if Plaintiff didn't agree. Plaintiff did not agree and was placed in what appeared to be a psychiatric observation room, located in the emergency room and left Plaintiff there for several hours, despite Plaintiff's continous request to be released and despite her request that staff notify her personal physician at South Shore Hospital. Plaintiff told hospital staff and security that records dating back over 25 years would reflect that Plaintiff has never been hospitalized for any psychiatric disorders and that her doctor (Dr. Wu) would verify same.

Plaintiff states that as an institution substantially supported by Federal Funding, Jackson Park Hospital is obliged to observe and comply with all Federal funding, Jackson Park Hospital is obliged to observe and comply with all Federal Statues and the United States Constitution. Specifically, the 5th Amendment and the 14th Amendment prohibits the denial of a citizen's right to "proceed on their way" except by due process. By accepting Federal Funding Jackson Park Hospital becomes an agent of the Federal Government and must adhere to the dictates of federal Statues and the Constitution. With respect to the instant case, Fundamental due process required that Jackson Park Hospital

9.

obtain probable cause to believe Plaintiff required a coerced psychiatric evaluation; as the statement of facts illustrate, defendants cannot make such a showing because all available information defendants were privy to did not establish probable cause.

Plaintiff states that Jackson Park Hospital should be considered a "State Actor" or Agency of the State of Illinois because of the subsequent rational. Jackson Park Hospital as an organization is funded by the Federal Funds and because of that federal funding is obliged to perform certain and specific public functions. Fore example, citizens exhibiting signs of psychiatric collapse, suicidal and/or homicidal ideation; without regard to that citizen's ability to pay, are oftentimes taken to Jackson Park Hospital for an initial psychiatric evaluation. Jackson Park Hospital's participation in the aforementioned example pre supposed significant public funding. Moreover, this action of initial psychiatric evaluation " of destitute citizens is a "custom or usage," that is statutorily given to State Mental Health Agencies; Illinois Department of Public Health.

Plaintiff, further states that the Supreme Court's "State Compulsion Test" is also satisfied by the foregoing illustration - in that "initial psychiatric evaluation" performed on indigent citizens is an obligation imposed on Jackson Park Hospital by contract and by Law. Plaintiff states that the "Nexus Test" is also satisfied by the previously mentioned illustration. Jackson Park Hospital is heavily regulated by both state and federal agencies; in addition, Jackson Park Hospital personnel are heavily regulated by both state and federal agencies; in addition, Jackson Park Hospital Personnel are also heavily regulated, For example, nurses, doctors, etc. are licensed and regulated by the Illinois Department of Licensing and Regulation.

Therefore, because Jackson Park Hospital performs functions traditionally

regulated by the State, in addition to the other (joint-activities with the state, Plaintiff as that the court declare Jackson Park Hospital a "State Actor" or agent of state for purpose of the Court's Federal Question Jurisdiction and/or title 42 United States Code, Section 1983 Construction.

## STATEMENT OF FACTS

1. On October 12, 2002, at approximately 3:30 p.m., at 9919 S. Parnell, Chicago, Illinois Larry K. Trask Sr., Plaintiff's brother, called the police. When the police arrived, Larry Trask told the police that Plaintiff had been incarcerated in a mental institution on 4 (four) separate occasions; that Plaintiff was under a doctor's care; that Plaintiff was on a medication schedule and was refusing to take her medication. Larry Trask ( hereafter called Larry) produced a document that he purported to be evidence that Plaintiff had been incarcerated in a mental institution and was on medication. Larry offered the document to the police officer, while police were examining the document, Plaintiff noted that the birth year on the document was 1975. Plaintiff, pointed out to the police officers examining the document, that the birth year on the document indicated 1975. The police officer said, " That's too bad, you're under arrest and you're going to Jackson Park Hospital." (Plaintiff handcuffed to her back, while in Robe and House Shoes and escorted out of 9919 S. Parnell, Chicago, Illinois. Handcuff were too tight) Larry further told the police officers that Plaintiff had entered her deceased mother's room, pushed into her mother's abdomen causing her demise; and that Plaintiff had attempted to poison her father.

Larry told police that he wanted Plaintiff locked up in Tinley Park Psychiatric Ward and that Plaintiff had to go to Jackson Park Hospital first, before she could be

transferred to Tinley Park Psychiatric Ward. Larry told the police officers that, Plaintiff was allegedly acting craze, pulling knifes on him and other and that she was violent with people.

2. Plaintiff was transported, by police car to the Police Station at 11100 (22nd. District) & Monterey, Chicago, Illinois where she was handcuffed to the wall by her right arm ( her damaged arm since 1990) for several hours. Eventually, Plaintiff was taken by two different police officers in a paddy wagon to the emergency room of Jackson Park Hospital, 7500 S. Stony Island, Chicago, Illinois. When Plaintiff arrived, Larry was already at the intake desk. Larry repeated the same False allegation and complete Fabrication he had uttered to the police while in the living room of Plaintiff's father, just prior; but added that Plaintiff used alcohol and drugs.

Plaintiff, again asked Jackson Park Hospital to notify her personal physician explaining that her Doctor, Dr. F. Wu, could verify that she has never been incarceration in a mental institution. Plaintiff, repeatedly told hospital staff that the allegations provided by her brother, Larry were false and a complete Fabrication. Specifically, Plaintiff told hospital staff that she was not under psychiatric care and was not on any kind of psychotropic medication. Plaintiff also told hospital staff that she did nothing to her mother, did not poison her father and was not using alcohol or drugs. Plaintiff told hospital staff to notify her personal doctor to verify the validity of her statements and that medical records, dating back over 25 years would reflect same

3. Hospital staff at Jackson Park Hospital told Plaintiff that she could leave. Plaintiff then exited the emergency room and walked outside the Hospital toward the main entrance between 75 & 76 and Stony Island of the hospital. Plaintiff entered the hospital's

main entrance and called a friend, Mrs. Dorothy Fields and explained the situation to her and asked if she/or her husband, Claybourn Fields would come and pick her up from the hospital.

4. Mrs. Dorothy Fields stated that she was not able to come but that her husband would come and pick me up. Plaintiff then exited the main entrance of the hospital, walked back toward the emergency room and was grabbed by Officer Henry, Officer Henry's Supervisor and Officer Holiday and dragged back to the emergency room. Plaintiff physically resisted this unlawful restraint, assault and battery, but Plaintiff being a woman was no match for the three security officers. As the security staff was coercing Plaintiff through the emergency room before entering the doors, her friend, Dorothy's Husband, Claybourn Fields, verbally intervened and asked the security staff if Plaintiff was under arrest. Security Staff responded that Plaintiff was not under arrest. Plaintiff was then placed into what appeared to be a psychiatric observation, locked in where she remained for several hours.

Plaintiff continued to inquiry as to the reason for her incarceration explaining that Jackson Park Hospital Staff should contact her personal physician, Dr. Wu, Eventually, Plaintiff was interviewed by a hospital staff member purporting to be a medical doctor and an hour later was interviewed by a psychiatrist. Plaintiff was removed from her "incarceration room on the emergency 1st. floor where she shared with another patient" and interviewed in another room; present were her friend, Larry Austin, Plaintiff's Daughter, Lorell Augustine, the self described psychiatrist and another female staff member. At the conclusion of the interview, the psychiatrist told Plaintiff that he found no reason to further incarcerate Plaintiff and that he would discharge her home. Plaintiff was

allowed to leave and did so.   Plaintiff demands a Jury Trial.

## **RELIEF**

Plaintiff respectfully request $300,000.00 ( Three hundred thousand dollars) in damages for the unlawful restraint and false imprisonment of the Plaintiff.  Plaintiff also request $9000,000.00 (nine hundred thousand dollars) in punitive damages because the defendant's behavior complained of was engaged with focused intent and malice along with any and all other orders this Honorable court and this Honorable Judge deems just and necessary and for this she shall forever pray.

*Lois Trask*
Lois Trask

For the Plaintiff - 99500
Lois Trask -   Pro Se
7776 S. Coles Avenue
Chicago, Illinois  60649
773-734-2558

14.